NOTICE
Decision filed 05/28/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250152-U

NO. 5-25-0152

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 25-CF-39 |
| | ) | |
| DAKOTA MARTIN, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err by finding that continued detention was necessary for defendant, where no conditions of pretrial release could mitigate the threat posed by defendant.

¶ 2    Defendant, Dakota Martin, appeals the February 25, 2025, denial of his motion for relief and the February 18, 2025, order of the circuit court of Jefferson County granting the State's petition to deny him pretrial release. On appeal, defendant contends that the circuit court's pretrial detention order should be reversed because the State failed to meet its burden of proving, by clear and convincing evidence, that defendant posed a threat to the safety of any person or persons or the community, that defendant had a high likelihood of willful flight, and that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. We affirm.

1

¶ 3                                    I. Background

¶ 4      On February 13, 2025, the State charged defendant by information with three counts of child pornography (720 ILCS 5/11-20.1(a)(2) (West 2024)), all Class X felonies, alleging that defendant, with knowledge of the content, and with intent to disseminate, reproduced, disseminated, offered to disseminate, or exhibited a videotape, film, or other similar visual reproduction or depiction (video) of a female child, whom defendant should have known was under the age of 13 years old. The video depicted the finger of an adult male penetrating the female child's vaginal area while simultaneously having her mouth penetrated by the penis of another adult male. The next day, on February 14, 2025, the State filed a verified petition to deny defendant pretrial release, alleging dangerousness.

¶ 5      On February 18, 2025, the circuit court held a hearing on the State's verified petition. The State proffered that Detective Bobby Wallace of the Jefferson County sheriff's office would testify that he received a CyberTip from the National Center for Missing and Exploited Children regarding potential child pornography conveyed via Snapchat on or about November 21, 2024. Detective Wallace then prepared a search warrant for the IPI address and internet provider records associated with the Snapchat username in question. Detective Wallace's search led him to Dana Ince, a resident of Jefferson County, Illinois. During a conversation with Ms. Ince, Detective Wallace learned that Ms. Ince's iPhone did not match the metadata reported in the initial CyberTip. Upon further inquiry, Ms. Ince informed Detective Wallace that three individuals, including defendant, a 21-year-old man, lived with her and had access to her internet on or about November 21, 2024.

¶ 6      Shortly thereafter, Detective Wallace interviewed defendant. Initially, defendant denied any knowledge of the CyberTip concerning files containing child pornography. Defendant then

disclosed that he had Snapchat accounts with female names or female email addresses. Defendant ultimately admitted that the Snapchat account in question belonged to him, and Detective Wallace then confirmed that the email address associated with the initial CyberTip contained the name of a female individual. Defendant also admitted that he had two Snapchat accounts that he used to receive and view pornography. Defendant admitted to Detective Wallace that he had a pornography addiction since his teenage years. Defendant stated that he did not intend to receive child pornography on November 21, 2024; however, he received a group of files on that day. Once he received the files, he admitted that he reviewed the files, and then with the understanding that the files contained children, disseminated the files to multiple people in exchange for more pornographic files. When Detective Wallace asked defendant the location of his phone, defendant stated that his phone was broken. Eventually, defendant admitted that Aubrey Fleming, his roommate and an individual who also lived at Ms. Ince's home, recently informed defendant that Detective Wallace was looking for defendant. As such, in anticipation of Detective Wallace's investigation, defendant intentionally broke his phone and threw it in the woods behind his apartment. After defendant's disclosure, defendant showed Detective Wallace where he threw his broken phone, at which time, Detective Wallace confirmed that the phone matched the make and model of the iPhone from the initial CyberTip.

¶ 7    The State further proffered that Detective Wallace would testify that defendant conveyed the same pornographic video containing a female child on November 21, 2024, at 9:24 a.m., 11:11 a.m., and 11:29 a.m. The State shared that the pornographic video depicted an adult male penetrating the vagina of a female child, under the age of 13, with his finger, while another adult male simultaneously penetrated the same female child's mouth with his penis. Lastly, the State proffered that Detective Wallace searched defendant's Snapchat account, wherein he recovered

3

the username, later identified as defendant, requesting another user at 1:20 p.m. on November 21, 2024, to "send me the youngest you got."

¶ 8     The State then argued that, although defendant was a young man without an extensive criminal history, the circuit court placed him on court supervision for criminal property to damage (23-CM-25) in 2023; defendant pled guilty to reckless driving (24-MT-241) in 2024, which was pending at the time of the offenses; and the State charged defendant with leaving the scene of an accident (25-MT-74) in 2025, prior to charging defendant with the offenses at issue. The State argued that pretrial detention was "absolutely necessary" to ensure defendant did not come into contact with electronic devices, appeared for court dates, and did not abscond the jurisdiction, given defendant "essentially *** confess[ed]" and faced a "very lengthy sentence *** which would factor into his propensity for flight." Moreover, the State argued that pretrial detention was necessary to protect several individuals, including Ms. Ince. Defense counsel responded, arguing that defendant was not a danger to any specific person or the community, never failed to appear in court, and lacked an extensive criminal history. Defense counsel requested the court release defendant to his mother's care and order conditions for release, including electronic monitoring and home confinement. The circuit court ordered defendant detained.

¶ 9     On February 19, 2025, defendant filed a motion for relief, arguing that the State failed to meet its burden of proving, by clear and convincing evidence, that defendant committed a qualifying offense, defendant posed a real and present threat to the safety of any person, persons, or the community, and that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons. Defendant also argued that the circuit court erred by failing to consider defendant's ties to the community, his willingness to abide by any

4

terms of pretrial release, that defendant did not use a weapon in the alleged offenses, and defendant lacked a criminal history.

¶ 10    On February 25, 2025, the circuit court held a hearing on defendant's motion for relief. Defense counsel argued that, due to defendant's family ties to the community, defendant's willingness to abide by pretrial release conditions, his lack of a criminal history, and the fact that no weapon was used in the offenses, the court should order conditions, such as home confinement or electronic monitoring, in place of detention. The State then presented the previous proffer, as stated above, from the initial detention hearing.

¶ 11    Following argument by the parties, the circuit court ordered defendant's continued detention. In doing so, the court recognized that, although defendant had local ties to the community, a limited criminal history, and the nature of the offenses at issue were nonviolent, the State charged defendant with "extremely serious charges" that carried a possible prison sentence of 18 to 90 years. The court stated that, even if the court ordered electronic home confinement, defendant had a high likelihood of reoffending, given his addiction to pornography. The court further stated that it appeared the State had a strong case against defendant, which led the court to believe that defendant could flee the jurisdiction, even though defendant had no history of flight. Moreover, the court considered the need to protect individuals, including Ms. Ince, who provided information to police about defendant. Lastly, the court stated that, given the seriousness and nature of the offenses at issue, which involved "the internet in some fashion," and the fact that the State recently charged defendant with leaving the scene of an accident, the court determined that no condition or combination of conditions would assure the court that defendant would comply with conditions of pretrial release and abide by court orders. Defendant filed a timely notice of appeal.

5

¶ 12                                    II. Analysis

¶ 13    On appeal, defendant argues that the circuit court's pretrial detention order should be reversed because the State failed to meet its burden of proving, by clear and convincing evidence, that defendant posed a threat to the safety of any person or persons or the community, defendant had a high likelihood of willful flight, and that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. Specifically, defendant asserts that the State failed to prove that defendant knew the children depicted in the videos, had a history of violence, threatened harm to the witnesses in the case, or engaged in behavior indicating a danger to others. Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022).

¶ 14    To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific, real, and present threat

_____

[1]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the

6

to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 15    Under the recent supreme court decision in *People v. Morgan*, 2025 IL 130626, ¶¶ 38, 43, our supreme court held that "when live witness testimony is presented at a pretrial detention hearing, a circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." However, when the parties proceed solely by proffer, as the State did here, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 54. With these principles in mind, we are not bound by the circuit court's factual findings and review the record *de novo*. *Id.* ¶ 48.

¶ 16    We have thoroughly reviewed the record on appeal in this matter. The circuit court heard a proffer from the State that included, *inter alia*, that defendant received a child pornographic video on his phone, at which time, defendant reviewed the video and then, with knowledge that the video contained a child engaging in sexual acts with two adult males, disseminated the video using his Snapchat account on three separate occasions. Defendant acknowledged that he disseminated the video in exchange for additional pornographic materials. Although defendant argues that the possession of child pornography is not a crime of violence and "[n]o one was harmed" by his actions, we are unconvinced. Rather, the female child shown in the pornographic video, though unidentifiable and unknown to defendant, was nevertheless a real victim who experienced real

---

defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

abuse in the making of the video that defendant viewed and then disseminated for personal gain, that is, to receive more pornographic materials. Defendant's act of further disseminating the video caused additional harm to the unidentified child.

¶ 17    Even though defendant lacks a violent criminal history, we find it reasonable to conclude that defendant, who admitted to having a pornography addiction, would continue to seek child pornographic material if granted pretrial release, thus, posing a real and present threat to the safety of any person or the community. Moreover, the evidence demonstrated that defendant had two Snapchat accounts he used to receive, view, and also disseminate child pornography. Given defendant's pornography addiction, the seriousness of the charges against him, and the ease of which he can access and create username profiles to receive and disseminate pornography, we cannot conclude that home confinement provides a reasonable condition to mitigate any perceived risk defendant posed, even if his mother, as defendant argues, supervised him and his devices. As such, we agree with the circuit court that, under the particular facts of defendant's case, defendant's continued detention remained necessary to avoid a real and present threat to the safety of any person or persons or the community and that no condition or combination of conditions could mitigate the risk defendant posed.

¶ 18                                    III. Conclusion

¶ 19    Therefore, in light of our review of the record, we affirm the circuit court's February 25, 2025, order denying defendant's motion for relief and affirm the court's February 18, 2025, order denying defendant pretrial release.


¶ 20    Affirmed.

8